Judgment rendered April 16, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,209-KA
No. 56,210-KA
No. 56,211-KA
No. 56,212-KA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                         Appellee

Versus

JA'SHUN JA'MARICK SMITH                    Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court Nos. 397,671; 385,121; 385,251; 385,519

Honorable John D. Mosely, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Paula Corley Marx

JAMES E. STEWART, SR.                 Counsel for Appellee
District Attorney

REBECCA A. EDWARDS
WILLIAM J. EDWARDS
COURTNEY N. RAY
Assistant District Attorneys

* * * * *

Before PITMAN, STEPHENS, and ROBINSON, JJ.

**STEPHENS, J.,**

This criminal appeal arises out of the First Judicial District Court, Parish of Caddo, State of Louisiana, the Honorable John Mosely, Jr., Judge, presiding. On September 4, 2021, the defendant, Ja'Shun Ja'Marick Smith, was involved in an altercation between two groups of juveniles that began earlier in the day at the Tinseltown Theater in Shreveport, Louisiana, and culminated in a rolling gun battle with over 50 shots fired from the parking lot of the Circle K at the intersection of Youree Drive and Bert Kouns a few blocks away from the movie theater. The bullets fired by the young men involved struck the Willis Knighton Pierremont Medical Center and vehicles stopped at the traffic light of that intersection, killing 13-year-old Kel'vonte Daigre, a passenger in the back seat of a white Honda Accord, and injuring several others.

Smith, who was 15 years old at the time of the shooting, was tried as an adult and was convicted as charged of one count of second degree murder, a violation of La. R.S. 14:30.1 (Count 1), eight counts of attempted second degree murder, violations of La. R.S. 14:30.1 and La. R.S. 14:27 (Counts 2-9), and four counts of aggravated criminal damage to property, violations of La. R.S. 14:55 (Counts 10-13). The trial court imposed a sentence of life imprisonment without benefit of probation or suspension of sentence, but with the benefit of parole on the second degree murder conviction (Count 1); concurrent sentences of 30 years at hard labor without benefit of probation or suspension of sentence, but with the benefit of parole on the attempted second degree murder convictions (Counts 2-9), with the concurrent sentences to be served consecutively to the life sentence imposed on Count 1; and concurrent sentences of 15 years at hard labor on the

aggravated criminal damage to property convictions (Counts 10-13), with these concurrent sentences to be served consecutively to the other sentences. Smith has appealed, urging three assignments of error.

**FACTS/PROCEDURAL HISTORY**

The shooting from which the instant charges arose involved multiple crime scenes, perpetrators, and victims. On September 4, 2021, at approximately 10:25 p.m., Shreveport Police Department ("SPD") patrol officers responded to a call from Tinseltown Movie Theater at 8400 Millicent Way in Shreveport, Louisiana, regarding a shooting. Off-duty SPD officers working security at Tinseltown had broken up an altercation earlier that day inside the complex between a large crowd of juveniles who were then asked to leave the premises. One of the officers, Sgt. Daniel Sawyer, is the K-9 supervisor for SPD. As soon as he and another officer heard the shots, which came from the northeast corner of the theater's parking lot right behind the Hampton Inn, they immediately headed out toward that area. The officers observed two young males running from the gunfire. As they were dealing with these initial shots fired, which included locating two victims, one at the intersection of Millicent Way and John Hendricks Drive, and the other in the lobby of the Hampton Inn,[1] they heard more shots coming from the area of Bert Kouns and Youree Drive.

As more SPD officers responded to the shootings that occurred at Tinseltown, a call came in reporting multiple shooting victims at the Longhorn Steakhouse on Youree Drive. Patrol officers found a white 2009

---

[1] Both victims had non-life-threatening injuries and were transported to Ochsner/LSU Health Center. Sgt. Sawyer recognized the victim in the hotel lobby as one of the juveniles who had been told to leave Tinseltown earlier that day.

Honda Accord that had been reported stolen. In its back seat was an unresponsive black male with gunshot wounds to his back. His injuries were life-threatening, and he was taken to Ochsner/LSU Health Center. He was pronounced dead on arrival. This victim was identified as Kel'vonte Daigre (B/M, d.o.b. 12/18/07). Kentravious Kennedy (B/M, d.o.b. 2/11/06), who had been driving the white Accord, was found by officers walking near the Longhorn Steakhouse. He had non-life-threatening gunshot wounds to the back and was transported to Ochsner/LSU Health Center.

While responding to the calls, Corporal Robert Cerami noticed a gray Kia Optima heading westbound on West 70th Street towards Line Avenue. The Kia Optima did not have its headlights on, and it was moving fast. Cpl. Cerami got behind the Optima, turned on his lights and siren, and attempted a traffic stop. Cpl. Cerami called for assistance, and a vehicle pursuit ensued through the Cedar Grove neighborhood before the Kia Optima "wrecked out" at 706 Damaka Drive. Four black males jumped out of the car and took off running, three heading south and one going north.[2] Cpl. Cerami described the clothing of the occupants for assisting officers. Patrol officers set up a perimeter, and with the help of SPD K-9 officers, including Sgt. Sawyer and his K-9 partner, they managed to locate one of the suspects and an AR pistol inside the perimeter.[3] The suspect was identified as Ikerryunt'a

---

[2] Cpl. Cerami's dash cam footage was introduced into evidence and shown to the jury.

[3] SPD Sgt. Clinton Grigsby assisted in the search and found the AR pistol and a black ski mask in the back of a Nissan truck parked at a residence at 718 Bringhurst Street, which is just behind Damaka Drive in the Cedar Grove neighborhood. The homeowner, Anthony Rogers, told Sgt. Grigsby that neither item belonged to him, and that he had heard dogs barking earlier that evening. Mr. Rogers thought maybe the suspects had jumped his fence. The next day, as he was getting ready to mow his yard, L.D. George, who resides at 705 Bringhurst Street, found a gun (that he did not own) laying in the yard by his lawnmower. Mr. George called the police as soon as he found

Stewart (B/M, d.o.b. 4/9/04). Stewart, who had been hiding in "thick vegetation," was taken to the hospital for treatment of a dog bite. He was then taken to the Violent Crimes Unit office for a post-*Miranda* interview.

Detective Jeremy Blanchard was the on-call investigator in the Homicide Unit of the SPD the night of the shooting. He initially responded to the Damaka Drive location where the search for the suspects was ongoing. He assisted with setting up the perimeter there, then went to the scene at Tinseltown. He was briefed by Cpl. Presley at the theater and walked the scene of the shooting there. Officers were looking for spent projectiles at the time, but none were ever recovered.

Det. Blanchard then responded to a crime scene at the Circle K at the corner of 7950 Youree Drive and Bert Kouns. At that location, officers found multiple expended shell casings (7.62, .223, 5.56, and 9mm) in the west entrance to the parking lot on the Bert Kouns side of the property. They also found a black ski mask among the shell casings.

Det. Blanchard pulled and watched surveillance video footage from the Circle K, which showed a gray Kia Optima enter the property at approximately 10:22 p.m., circle the gas pumps, and park in the west entrance of the lot facing Bert Kouns. At 10:24:19, all four of the vehicle's occupants exit the vehicle. The driver was wearing a white tank top with what appeared to be blue jean shorts and white socks. At 10:24:24 p.m., three of the males are seen discharging firearms in the direction of the intersection. There are muzzle flashes, something commonly observed when a firearm is fired and projectiles are expelled from the barrel. All four males

_____

the gun. The night before, Mr. George woke up when he heard "some commotion" when the K-9 was outside, and he figured "those boys" threw the gun in his yard.

4

jump back into the vehicle, which then takes off westbound on Bert Kouns. This was the gray Kia Optima spotted by Cpl. Cerami at West 70th and Line Avenue. The footage also showed several vehicles being hit by the gunfire.[4]

The vehicles struck by gunfire were a blue Nissan Armada, a white Honda Accord, a silver Toyota Sienna, and a white Jeep Renegade. Willis Knighton Pierremont also received damage from the gunfire. As noted above, the driver and passenger of the white Honda Accord were hit by shots fired from the men in the Circle K parking lot. The driver died as a result of his injuries, and the passenger was shot three times in the back. The driver of the silver Toyota Sienna was also shot once in the right shoulder. The drivers and passengers of the other vehicles were at risk from the gunfire, as all vehicles were struck by bullets.

Corporal Christopher Collins is a crime scene investigator with SPD's Crime Scene Investigations ("CSI") Unit. Cpl. Collins was called out to the homicide scene at Youree and Regal Drives that evening around 11:30 p.m. He was briefed by officers on the scene, then he photographed the scene and collected evidence. Officer Matthew Dixon, also with the CSI Unit, took photographs of the deceased. Ofc. Dixon then went to Damaka Drive where he photographed and secured the gray Kia Optima. Cpl. Collins noted that any photographs of or evidence collected from the white Honda Accord's interior were only done after the car was taken to a secure bay at the SPD impound lot and search warrants had been obtained. The white Accord had several projectile defects and what appeared to be a blood stain on its rear

---

[4] Det. Blanchard also obtained video surveillance footage from the Take 5 Oil Change across the street from the Circle K. This footage shows the Kia Optima and shots being fired. It also shows the white Honda Accord in which the victim, Kel'vonte Daigre, was a passenger.

driver's side door. Inside the car, there was blood on the rear left side floorboard, door frame, and that seat's outer edge. No firearms were recovered from the vehicle. An expended 9mm cartridge casing and projectile fragments were recovered.[5]

The gray Kia Optima was also secured in an SPD bay, a warrant was obtained, and then it was photographed and searched for evidence by Cpl. Collins. The interior of the Optima had one projectile defect on its rear driver's side door, which according to Cpl. Collins was consistent with a bullet having travelled from the vehicle's interior to its exterior. Latent fingerprints were taken, and the interior door handles, steering wheel, gearshift, and a soda pop can found in the center console were swabbed for DNA.

Found inside the Kia Optima were a .300 Blackout expended cartridge, an expended 7.62 caliber cartridge casing, a black hoodie, an Apple watch, a blue baseball cap, some slippers, a bank card, a wallet, and some memorial pamphlets. The firearm turned in by Sgt. Grigsby (an AR pistol) is a .556/.223 pistol rather than a rifle because it has no stock. The other weapon recovered (the one turned in by Mr. Rogers) is a Romarm Cugir pistol. At trial, both of these weapons were matched up to a bullet jacket and fragments and/or cartridge cases found at the crime scenes.

On September 9, 2021, Cpl. Collins informed Det. Blanchard that a print found on the exterior window of the rear driver's side door of the Kia Optima was determined to match Ja'Shun Smith's fingerprint. A few weeks

---

[5] Cpl. Collins also testified about photographs taken showing damage to and evidence collected from the other vehicles that were shot up by the young males in the Kia Optima. Likewise, there was testimony at trial from some of the terrified people in those vehicles that night.

later, Cpl. Collins and Det. Blanchard were present for the search of a residence associated with Smith. Although he tried to run during the search, Smith was apprehended and placed under arrest. A 9mm handgun, two phones,[6] and two 7.62 mm magazines were found in Smith's bedroom. No weapon matching the magazines was found. Det. Blanchard found a black BBG ("Blue Benji Gang") hoodie in a closet. At trial, Det. Blanchard was shown a photo taken by Cpl. Collins of the three memorial pamphlets found in the Kia Optima. He stated that they were memorial pamphlets of homicide victims who had been members of the BBG.

Katie Edwards was also at the home when the search warrant was executed. Det. Blanchard spoke with her that day and again at the SPD Violent Crimes Unit office. Katie told Det. Blanchard that she saw Smith at Tinseltown on the night of the shooting. Her description of his clothing that night matched the clothing seen in Cpl. Cerami's MVS video of the driver of the Kia Optima. Katie gave Det. Blanchard permission to download her phone at their second interview. Text messages between Katie and Ja'Shun from around 10:20 p.m. on September 4, 2021, the night of the shooting were:

Katie:     That ya'll?

Ja'Shun:   Nah.

Katie:     Stop lying.

Ja'Shun:   The second was,

Katie:     I know.

Ja'Shun:   Okay.

---

[6] One of the phones belonged to Ja'Shun Smith, and the other belonged to Katie Edwards.

Katie:      Stupid as fuck, Bruh.

Katie had previously been a passenger in the gray Kia Optima when Smith was driving it, and she had seen Smith with a Glock and an AK in the past.

Kentravious Kennedy testified that he was a close friend/relative of the victim, Kel'vonte Daigre.  Kennedy was driving the white Honda Accord on September 4, 2021, and was shot in the back in the area of his left shoulder.  Kel'vonte was in the back seat directly behind him.  A person "he does not know" was on the other side of Kel'vonte and a guy called Marquis was in the front passenger seat.

Kennedy drove through the Tinseltown parking lot that night.  When he got onto Bert Kouns, he stopped at the intersection and was reading a text message.  As Kennedy looked down, "I seen a person in front of me, back window got busted out, glass shatter(ed)."  That's when Kennedy ducked for cover and got shot.  He didn't know where the shots came from and didn't know why it happened.  Kennedy stated that he had not shot at anyone that night.  After Kennedy was hit, he drove to the Longhorn Steakhouse, ran inside, and asked for medical assistance.  He saw Kel'vonte open his door but didn't see what the other two occupants of the car did or where they went.

Kennedy stated that he was familiar with the Three Babies Gang, and that his cousin Kel'vonte "used to hang with some people out of there," but "he wouldn't be around him that much."  Kennedy denied hanging out with the Three Babies Gang and stated that he was not familiar with the Blue Benji Gang, Ja'Shun Smith, Christopher Davenport, Ikerryunt'a Stewart, or Rodney Stewart.

On October 1, 2021, a bill of information was filed in district court No. 385,251 (56,211-KA) charging Smith with eight counts of attempted first degree murder, violations of La. R.S. 14:27 and La. R.S. 14:30. On that same date, a motion to divest the juvenile court of jurisdiction was filed. On October 4, 2021, in No. 385,519 (56,212-KA), the second degree murder case, counsel was appointed to represent Smith, and his bond was set at one million dollars.

On December 15, 2021, in No. 385,121 (56,210-KA), an indictment was filed charging Ikerryunt'a Vernell Stewart, Christopher Michael Davenport, and the defendant with one count of second degree murder, eight counts of attempted second degree murder, and four counts of aggravated criminal damage to property. On that same date, the State made a motion to increase Smith's bond to $50,000 on each count of aggravated criminal damage to property, and the filings from docket Nos. 385,251 and 385,519 were incorporated into No. 385,121.

On January 4, 2022, Smith, with counsel, appeared at arraignment and pled not guilty to the charges. On September 20, 2023, all of the minutes and filings of the above three docket numbers were incorporated into Docket No. 397,671 (56,209-KA). Also on September 20, 2023, an amended indictment was filed charging only Smith with the aforementioned 13 counts. The defendant, through counsel, pled not guilty at an arraignment held that same date.

On October 6, 2023, the State filed a 404(B) notice as well as supplementary responses to discovery. On October 12, 2023, the defense filed two motions *in limine*: one to exclude untimely disclosed evidence filed and one to restrict the use of prejudicial terminology. The State filed its

response to the motions on October 13, 2023, and on October 16, 2023, the trial court heard and denied both motions. The State announced it was ready for trial, and the defense took writs to the Second Circuit seeking review of the trial court's denial of its motions *in limine*. The trial court did not stay the trial, and jury selection began. On October 18, 2023, the Second Circuit denied the defendant's writ application, and the jury was empaneled. On October 25, 2023, the jury rendered its verdict, finding the defendant guilty as charged of all counts. Smith filed motions for post-verdict judgment of acquittal and new trial on November 27, 2023. On November 28, 2023, those motions were considered and denied, and Smith was sentenced. On January 8, 2024, Smith filed a motion to reconsider sentence, which was denied. His motion for appeal was filed on January 30, 2024.

## DISCUSSION

### *Lack of Subject Matter Jurisdiction*

**Arguments of the Parties**

In his first assignment of error, Smith contends that the district court had no basis for jurisdiction over his case as to the charges of aggravated criminal damage to property, since that offense is not one of the enumerated offenses set forth in La. Ch. C. art. 305(2). Appellate counsel urges that the juvenile court was not divested of its jurisdiction over Smith simply by the State's filing against him in district court of the indictment on second degree murder and attempted first degree (later amended to attempted second degree) murder charges.

Smith was 15 years old on September 4, 2021, when he was alleged to have committed the four counts of aggravated criminal damage to property. Adjudication of Smith for those offenses is subject to the exclusive

10

jurisdiction of the juvenile court. La. Ch. C. art. 305. If an offense is not an enumerated offense set forth in subparagraph (2) of La. Ch. C. art. 305, the filing of an indictment alleging such noncovered offenses does not divest the juvenile court of its jurisdiction over a juvenile alleged to have committed *those offenses*. Therefore, the district court convictions of Smith as to the four counts of aggravated criminal damage to property, Counts 10-13, cannot stand. *See*, *State v. Newton*, 12-510 (La. App. 3 Cir. 2/13/13), 129 So. 3d 11, *writ denied*, 13-0595 (La. 10/11/13), 123 So. 3d 1214.

Smith urges this Court to vacate these four convictions and remand the matter to the juvenile court for further proceedings. The Louisiana Supreme Court in *State in the Interest of D.T.*, 19-01445 (La. 4/3/20), 340 So. 3d 745, observed that La. Const. art. V, § 19 constitutes "an exhaustive list of offenses which may be excepted from the juvenile court's jurisdiction." *Id.*, 19-01445, p. 11, 340 So. 3d at 753. Both second degree murder and attempted second degree murder are among the offenses which may be excepted from the juvenile court's jurisdiction. The State acknowledges, however, that aggravated criminal damage to property is not, but maintains that the district court properly exercised jurisdiction as to that charge nonetheless.

According to the State, the juvenile court was automatically divested of jurisdiction over the charge of second degree murder upon the filing of the indictment on December 15, 2021. (No. 56,210-KA, p. 4). Asserting initial charges of eight counts of attempted first degree murder, the State filed a bill of information and a motion to divest after the juvenile court found probable cause for the charges. (No. 56,211-KA, pp. 2-8). The State then indicted Smith for attempted second degree murder (Counts 2-9)

11

instead of attempted first degree murder as initially billed. (No. 56,210-KA, p. 4).

The State argues that, upon properly divesting the juvenile court of its jurisdiction and transferring jurisdiction to the district court pursuant to La. Ch. C. art. 305(A) and (B) as to the count of second degree murder and eight counts of attempted second degree murder, the district court properly exercised jurisdiction over the four counts of aggravated criminal damage to property. The State contends that the aggravated criminal damage to property charges were part of the same event that resulted in the second degree murder and attempted second degree murder charges and, as such, were properly tried with them *in spite of the fact that* the offense of aggravated criminal damage to property is not one of the enumerated offenses under *either* La. Const. art. V, § 19 *or* La. Ch. C. art. 305.

The State points out that it would be a waste of judicial resources and time, taxpayer money, and the State's limited resources to conduct the same trial in two courts to ensure that the defendant be held accountable for his actions. The State notes that there is jurisprudence in support of the defendant's position. *See*, *State v. Myles*, 23-0585 (La. App. 4 Cir. 2/5/24), 384 So. 3d 938, 940-41,[7] *writ denied*, 24-00291 (La. 4/23/24), 383 So. 3d 603, *writ denied sub nom. State v. Smith*, 24-00258 (La. 4/23/24), 383 So. 3d 609.

**Analysis**

In *State v. Myles*, *supra*, in July 2022, 17-year-old Kendall Myles and 15-year-old Kayla Smith were arrested and booked into the Juvenile Justice

---

[7] This case was a consolidated case involving two separate juvenile matters.

12

Intervention Center in Orleans Parish. Initially Myles was charged by petition in juvenile court. While the petition was pending, the State filed the bill of indictment in Orleans Parish Criminal District Court on September 14, 2022. *Id.*, 23-0585, 384 So. 3d at 940-41. Myles' charges included La. R.S. 14:26, La. R.S. 14:64-conspiracy to commit armed robbery with a firearm; La. R.S. 14:64.3(A)-armed robbery with the use of a firearm; La. R.S. 14:27, La. R.S. 14:30.1-attempted second degree murder; La. R.S. 14:94(F)-discharging a firearm during a crime of violence; and La. R.S. 14:108.1(C)-aggravated flight from an officer. Myles was charged as an adult pursuant to La. Ch. C. art. 305(B).[8] *Id.*, 23-0585, pp. 1-2, 384 So. 3d at 941.

On July 19, 2022, the State filed a petition in juvenile court charging Smith with aggravated second degree battery, armed robbery, unauthorized use of a motor vehicle, and resisting an officer. She entered a plea of not guilty in juvenile court. While that case was pending, Smith was charged in the same indictment with Myles for violations of La. R.S. 14:26, La. R.S. 14:64-conspiracy to commit armed robbery with a firearm; and La. R.S. 14:64.3(A)-armed robbery with the use of a firearm. *Id.*, 23-0585, p. 2, 384 So. 3d at 941.

In response, both defendants moved to quash the indictment on two grounds: it was untimely because more than 60 days had passed before it was handed down; and none of the crimes alleged therein were among those

---

[8] La. Ch. C. art. 305(B)(1)(a) provides that the district attorney shall have the discretion to file a petition alleging any of the offenses listed in Subparagraph (2) of this Paragraph in the juvenile court or, alternatively, to obtain an indictment or file a bill of information. If the child is being held in detention, the district attorney shall file the indictment, bill of information, or petition in the appropriate court within sixty calendar days after the child's arrest unless the child waives this right.

13

set forth in La. Ch. C. art. 305(B)(2). *Id.* On February 2, 2023, the trial court quashed the bill of indictment against both Smith and Myles in its entirety. *Id.*, 23-0585, p. 3, 384 So. 3d at 941.

The Fourth Circuit found that the trial court erred in quashing the bill of indictment against both Myles and Smith to the extent that both were charged with offenses enumerated in Subparagraph (2) of La. Ch. C. art. 305(B)—Myles, armed robbery with a firearm and attempted second degree murder; and Smith, armed robbery with a firearm. Upon their indictment with these charges, the juvenile court was properly divested of jurisdiction. *Smith v. Myles*, 23-0585, pp. 8-9, 384 So. 3d at 944. The Fourth Circuit then noted that the remaining charges, conspiracy to commit armed robbery with a firearm, discharging a firearm during a crime of violence, and aggravated flight from an officer, were not enumerated in Subparagraph (2) of La. Ch. C. art. 305(B), and, as such, were properly quashed by the trial court. *Id.*, 23-0585, p. 9, 384 So. 3d at 945.

In the instant case, this Court finds, as did the Fourth Circuit in *State v. Myles*, *supra*, that the district court had jurisdiction only over the crimes specifically set forth in La. Ch. C. art. 305(B), i.e., second degree murder and attempted second degree murder. The offense of aggravated criminal damage to property is not an enumerated offense under La. Ch. C. art. 305(B) or La. Const. art. V, § 19. Therefore, the district court lacked the jurisdiction to try the defendant, Ja'Shun Smith, on four counts of aggravated criminal damage to property. These convictions and sentences will be vacated for lack of jurisdiction over Smith as to these charges.[9]

_____

[9] However, regarding the convictions having been declared null because of lack of jurisdiction, double jeopardy does not attach. La. C. Cr. P. art. 595(1) provides that a

14

*Introduction of Evidence of Gang Affiliation/Involvement*

**Arguments of the Parties**

In his second assignment of error, Smith argues that the district court deprived him of his right to the presumption of innocence and the right to a fair trial and erred by allowing the introduction of evidence of involvement with a gang or group to show motive. This evidence was not relevant, but if it was, it was more prejudicial than probative.

Prior to trial, the State filed a 404(B) notice of its intent to introduce evidence that Smith was affiliated with the Step or Die or Blue Benji Gang, and that some of the victims were associated with Three Babies Gang, a rival gang. The defense filed a motion *in limine* seeking to restrict the use of prejudicial terminology, including gang references (and the use of the word "defendant" by the State when referring to Smith), which was denied by the trial court. A writ was filed and denied by this Court "on the showing made."

According to Smith, a review of the record shows that the trial court erred in denying his motion *in limine*. Gang references introduced into evidence in his trial implied guilt by association on his part. Smith urges that the trial court's admission of evidence of gang affiliation and that the shooting was gang-related was not harmless error. The evidence admitted in this case had little probative value and was tenuous. Such evidence included: clothing with gang lettering "BBG" found at Smith's house; testimony by Annalies Smith that the defendant was affiliated with BBG (the Blue Benji Gang) in September 2021; a photograph of memorial

person shall not be considered as having been in jeopardy in a trial in which the court lacked jurisdiction. *State v. Mock*, 18-530 (La. App. 3 Cir. 2/6/19), 265 So. 3d 1029.

15

pamphlets of homicide victims who were members of the BBG found inside the Kia Optima involved in the shooting; and testimony from Kentravious Kennedy, the driver of the white Honda Accord who was shot on September 4, 2021, that: he was familiar with but did not hang out with the Three Babies Gang; he was not familiar with the Blue Benji Gang; he did not know the defendant or the other suspects; and the victim, Kel'vonte Daigre, "used to hang with some people out of there," meaning the Three Babies Gang, "but would not be around them that much."

Smith urges that the prejudicial effect of painting him as a gang member out for revenge outweighed any probative value of the evidence introduced at trial, as the evidence introduced by the State failed to show that a gang rivalry led to the shooting on September 4, 2021.

The State, on the other hand, asserts that the trial court did not err in admitting evidence of Smith's gang involvement at trial. The State points out that at trial, defense counsel did not make contemporaneous objections to any of the complained of references at all. Furthermore, the defense motion *in limine* alleged simply that use of the terms "gang" or "gang" member or reference to the name of a "gang" would be misleading and would be highly prejudicial and contrary to La. C.E. art. 403. Thus, on appeal, this Court should consider the defendant's art. 404(B) objections waived.

According to the State, this evidence of Smith's gang involvement, discovered during the investigation, was relevant to establish motive and intent. It explained why the 15-year-old defendant and his friends would open fire at a busy intersection that Saturday night; more specifically, it provided the reason why they were targeting the white vehicle in which

16

Daigre, who was in a rival gang, and Kennedy, were riding. The State also suggests that this evidence was relevant in proving that Smith committed the shooting with the required specific intent to kill. However, should this Court find that the admission of this evidence was in error, then it was harmless in light of the overwhelming evidence of the defendant's guilt.

**Analysis**

La. C. Cr. P. art. 841(A) provides in part that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. However, subsection (B) of art. 841 provides that the requirements of an objection shall not apply to the court's ruling on any written motion.

We reviewed the motion *in limine* as well as the trial transcript for any objections to the allegedly erroneously admitted evidence by defense counsel.[10] There were no objections made, much less any urging violations of La. C.E. art. 404(B).[11] The sole basis for Smith's motion *in limine* as to the admission of this evidence was La. C.E. art. 403. Specifically, defense counsel argued, "[t]o allow the use of the term… 'gang' or 'gang' member or the reference of the name of a 'gang' would be misleading, would imply to the jury that the accused is guilty, and necessarily, must defend himself in the proceedings. Such implications are highly prejudicial and contrary to Louisiana Code of Evidence Art. 403." Most importantly, the trial court's

---

[10] *See*, R. p. 418 (during Cpl. Collins' testimony-introduction of photograph of B.B.G. hoodie found during search of home in Bossier City); R. pp. 734-35 (during Det. Blanchard's testimony-introduction of photograph of memorial pamphlets found in gray Kia Optima;); R. p. 671-72 (Kennedy's testimony); R. pp. 694-95 (Annalies Smith's testimony).

[11] Arguably, this is because Smith's motion *in limine* was filed in response to the State's 404(B) Notice of its intent to introduce at trial evidence of both the defendant's and the victim's gang affiliations.

17

denial of the defense motion was based solely on La. C.E. art. 403. In light of the above, this Court will review Smith's assignment of error, but we will not consider the defendant's art. 404(B) argument.

La. C.E. art. 403 provides that although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *State v. Wright*, 11-0141 (La. 12/6/11), 79 So. 3d 309; *State v. Cosey*, 97-2020 (La. 11/28/00), 779 So. 2d 675, *cert. denied*, 533 U.S. 907, 121 S. Ct. 2252, 150 L. Ed. 2d 239 (2001). As the Third Circuit noted in *State v. Hamilton*, 99-523, p. 10 (La. App. 3 Cir. 11/3/99), 747 So. 2d 164, 170:

> Relevant evidence of other crimes or misconduct of an accused will always be inculpatory and thus prejudicial. It is only unduly prejudicial evidence of other crimes which inflames the jury's emotions or otherwise causes them to convict the Defendant for reasons other than his actual guilt which should be excluded. Inculpatory evidence is probative of an incriminating fact, circumstance, or involvement which tends to either establish guilt or from which guilt may be inferred. Inculpatory evidence, by its nature, is prejudicial to a defendant accused of a crime. Unfairly prejudicial evidence makes a conviction more likely because it inflames the emotions of the jury or affects the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.

Courts have held that evidence of gang involvement or affiliation was properly admitted to show motive and intent to commit murder. *See, State v. Sumlin*, 44,805 (La. App. 2 Cir. 10/28/09), 25 So. 3d 931, *writ denied*, 09-2738 (La. 11/19/10), 49 So. 3d 400; *State v. Brown*, 42,054 (La. App. 2 Cir. 8/29/07), 965 So. 2d 580, *writ denied*, 07-1939 (La. 2/15/08), 976 So. 2d 174; *State v. Gray*, 14-1213 (La. App. 4 Cir. 11/25/15), 179 So. 3d 936, *writ*

*denied*, 16-0006 (La. 1/13/17), 215 So. 3d 241; and, *State v. Weatherspoon*, 06-539 (La. App. 5 Cir. 12/12/06), 948 So. 2d 215, *writ denied*, 07-0462 (La. 10/12/07), 965 So. 2d 398.  As in these cases, urges the State, evidence of Smith's gang affiliation was properly admitted.  We agree.

At the 404(B)/motion *in limine* hearing, the State asserted its intent to elicit testimony that the shooting of the 13-year-old Kel'vonte Daigre was over "gang issues" and the motive of the defendant.  The complained of evidence was not direct proof of gang affiliation on the part of Smith; there was no testimony that he was in fact a member of the BBG; however, the BBG sweatshirt and memorial pamphlets found in the Kia Optima, together with the testimony of Kennedy and Ms. Smith, were circumstantial evidence from which the jury could have made such an inference.  Furthermore, such a determination is reasonable in light of the totality of the evidence introduced at trial, since the facts unequivocally established that the shooting of Daigre came after the fight between two groups of juveniles at Tinseltown and a subsequent shooting in the corner of the theater parking lot in which two other young men sustained serious injuries.  The trial court did not abuse its vast discretion in finding that the above evidence was admissible.  This assignment of error is without merit.

***Imposition of Consecutive Sentences***

**Arguments of the Parties**

In his third and final assignment of error, Smith urges that the trial court erred in failing to set forth sufficient justification for imposing consecutive sentences in this case, which are excessive by constitutional standards and must be reversed.

19

According to Smith, the trial court did not articulate its reasons or justification for the imposition of consecutive sentences.  Smith was 15 years old at the time of the offenses of conviction and should not be treated as a grave risk to community safety.  According to appellate counsel, consecutive sentences totaling life in prison, plus 30 years and 15 years, subject Smith to excessive punishment violative of the Eighth Amendment to the U.S. Constitution and La. Constitution art. I, § 20.

The State argues that the record provides ample support for the sentences imposed by the trial court in this case.  La. C. Cr. P. art. 883 provides when a defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.  The State notes that art. 883 is clear that concurrent sentences are not required, and that the determination of whether to impose concurrent sentences is within the discretion of the trial court.

The State contends that even though imposition of consecutive sentences requires justification from the evidence or the record, the trial court's failure to set forth specific reasons for imposing consecutive sentences does not require remand where the record provides an adequate factual basis to support consecutive sentences.  Prior to imposing sentence in this case, the trial court stated that it considered the facts and evidence produced at trial, the seriousness of the offenses, the number of victims and incidents, the damage caused and life endangered, and the sentencing articles, including La. C. Cr. P. arts. 893 and 894.1.  Additionally, the court considered that the defendant used a dangerous weapon and presented a risk

of loss of life or great bodily harm to more than one person, and that he was 15 years old at the time of the offenses and expressed no remorse.

**Analysis**

When two or more convictions arise from the same act or transaction, or constitute part of a common scheme or plan, the terms of imprisonment shall be served concurrently, unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences are not mandatory; the trial court has the discretion to run the sentences consecutively. *Id.*; *State v. Anderson*, 55,550 (La. App. 2 Cir. 4/10/24), 383 So. 3d 1081, *writ denied*, 24-00779 (La. 10/23/24), 395 So. 3d 249, *cert. denied*, ___ U.S. ___, 2025 WL 951183 (2025); *State v. Minnieweather*, 52,124 (La. App. 2 Cir. 6/27/18), 251 So. 3d 583.

Since Smith only contests the consecutive nature of his sentences, and it was within the trial court's discretion to order the sentences to run consecutively rather than concurrently, the focus of our analysis is whether the trial court stated the factors considered and its reasons for the consecutive terms. La. C. Cr. P. art. 883; *State v. Anderson*, *supra*; *State v. Passaniti*, 49,075 (La. App. 2 Cir. 6/27/14), 144 So. 3d 1220, *writ denied*, 14-1612 (La. 3/6/15), 161 So. 3d 14; *State v. Smith*, 46,343 (La. App. 2 Cir. 6/22/11), 71 So. 3d 485, *writ denied*, 11-1646 (La. 1/13/12), 77 So. 3d 950.

We find that the record provides an adequate factual basis for the trial court's determination that Smith's sentences be served consecutively. The defendant's actions were brazen and committed with no regard for the welfare and safety of people in the vicinity around him. Smith made a conscious decision to open fire at a major intersection that Saturday night, which we note was during the busy Labor Day weekend. There was no

21

justification for the shooting other than gang-related retaliation or a continuation of the dispute that began earlier at Tinseltown. Fifty expended casings were collected from the Circle K parking lot. Two males in the targeted vehicle were hit—Daigre was killed, and Kennedy was injured. Kaitlyn Harper was struck by a bullet while in a vehicle with her parents at the intersection where the shooting took place. It is sheer luck that no one else was killed or seriously injured. We find that the consecutive sentences imposed by the trial court are not constitutionally excessive as they are not grossly disproportionate to the severity of the offenses and do not shock the sense of justice. This assignment of error has no merit.

## CONCLUSION

For the reasons set forth above, the convictions and sentences of the defendant, Ja'Shun Ja' Marick Smith, for aggravated criminal damage to property are vacated based upon our determination that the district court lacked jurisdiction over the defendant as to those charges. The matter is remanded to the trial court for further proceedings consistent with this proceeding. The convictions and sentences of the defendant, Ja'Shun Ja'Marick Smith, for second degree murder and attempted second degree murder are hereby affirmed.

**CONVICTIONS AND SENTENCES FOR COUNTS 10-13 (AGGRAVATED CRIMINAL DAMAGE TO PROPERTY) VACATED; REMANDED.**
**CONVICTIONS AND SENTENCES FOR COUNT 1 (SECOND DEGREE MURDER) & COUNTS 2-9 (ATTEMPTED SECOND DEGREE MURDER) AFFIRMED.**